O’Connell, Judge,
delivered the opinion of the court:
This is an appeal from a decision of the Board of Appeals of the Patent Office affirming the rejection by the Primary Examiner of claims 1, 2, 4, 6, 7, 8, and 9 of appellant’s application for a patent on / “Curled Glass Filaments and Methods of Making the Same.” Claim 5 was allowed. Only method claims are here on appeal.
Claim 1 is illustrative of the subject matter defined by the rejected claims and reads as follows:
1. A method of preparing filaments of glass characterized by causing molten glass to flow in a liquid stream to the vertex of a substantially cone-shaped, heated, rotating stream of gas or vapor traveling with a high velocity under such pressure as will break up the said stream of molten glass into fine inherently curly filaments.
The claim is largly self-explanatory of the invention sought to be patented. It will be noted that the method defined by the claim comprises the making of what is familiarly known as “glass wool” by disrupting a stream of molten glass by a particular type of fast moving blast of gas or vapor. Claims 6, 7, 8, and 9 describe the velocity of the stream as “supersonic,” while claims 2 and 4 relate to a modification of the basic idea involving the addition of solid particles :to the glass.
*866 The cited references are:
Kennedy et al., 328,226, October 13, 1885.
Edwards (British), 481,690, March 16,1938.
Ladisch, 2,571,457, October 16, 1951.
The patents to Kennedy et al. and to Edwards describe the formation of glass filaments by the action of jets of gas on molten glass. The principal reference, however, is the patent to Ladisch which was co-pending with appellant’s application, but earlier filed. It is admitted by appellant that the manipulative steps of Ladisch, including the characteristics of the gas stream and its relationship to the stream of molten liquid, substantially correspond to those of the Siu application. The difference between the two groups of claims is that appellant’s claims are directed toward the specific use of the method with molten glass, while those of the patent to Ladisch are directed toward the method generically, and toward its use with resinous materials specifically.
Appellant notes that due to the higher melting point of glass, the Siu method is carried out at higher temperatures than the method of Ladisch but, as pointed out by the Solicitor for the Patent Office, the claims in issue represent a species of Ladisch’s invention. Ladisch and Siu have a common assignee and a common non-exclusive licensee, the United States Government, as represented by the Office of the Quartermaster General of the Department of the Army.
Both Ladisch and Siu it appears constituted at one time a research team working in the quartermaster’s development laboratories at Philadelphia. With respect to the outcome of that joint enterprise, appellant states in his brief:
Experiments carried out with molten glass in accordance with appellant’s directions, proved highly successful and to the surprise of the research team enabled the production of astonishing quantities of very fine glass wool at the rate of 156,000,000 feet per minute from a single nozzle.
Dr. Ladisch’s and Dr. Siu’s (appellant) respective inventions were submitted to the Government for patenting, and after exhaustive study, separate patent applications were filed for Dr. Ladisch, and for Dr. Siu, respectively; each patent application containing a cross reference to the other * * *.
Dr. Ladisch’s patent application subsequently matured into Patent No. 2,571,457 containing generic claims of sufficient scope to include organic as well as inorganic starting materials, and a set of species claims * .* * defining his starting materials as resins. Ladiscb’s patent contains no species claims drawn to inorganic starting material.
The claims in appellant’s case are limited to the use of molten glass as a starting material * * *.
*867 Appellant Siu submitted to the board, under the provisions of 35 U. S. 0. § 253,[1] a formal disclaimer of any part of his patent “as would extend beyond the expiration date of [the Ladiseh Patent] No. 2,571,457 on October 16, 1968.”
The Primary Examiner rejected the claims as failing to define invention over Ladiseh:
* * * In rejecting the claims on this reference it was held that the broad concept for which Ladiseh was allowed claims does pot become patentable merely because it is applied to molten glass. This holding is founded upon the fact that it is common practice and well known that molten glass may be blown into filaments by a nozzle similar to the nozzle employed by the appellant and Ladiseh. Evidence of this common practice is shown by the patent to Kennedy et al. and the British patent. -
The Board of Appeals, having discussed the references and the involved method claimed by appellant, affirmed the rejection upon the same grounds as those stated by the examiner. In addition, the board separately rejected claim 1 on Kennedy et al. and Edwards. It also considered the effect of the disclaimer entered by appellant, which disclaimer had not been presented before the examiner. On that point the board properly observed:
* * * It is apparently appellant’s view that a disclaimer of the character presented would avoid one of the familiar evils of double patenting, that of extension of monopoly, and accordingly that, the rejection based on the Ladiseh patent should no longer be insisted on. The evils of double patenting where the two patents do not issue on the same date include that of extension of monopoly but this is not the only objection to double patenting. The pertinent statutes do not, in our opinion, warrant the allowance of more than one patent for a single invention independently of the question of extension of monopoly. See Underwood v. Gerber, 1893 C. D. 340; 630 O. G. 1063; 149 U. S. 224. The essential issue here is one of whether or not the claims represent a distinct and patentable invention, and we are of the opinion that this question must be answered in the negative, particularly in view of the ancillary references Kennedy et al. and Edwards relied on by the Examiner. The papers referred to [defining the disclaimer] are accordingly without significance from the standpoint of the rejection under consideration, and their contents have not been studied.[2]
*868 In "the situation we have just described the 'Ladisch patent, which issued on an earlier filed application, may be properly cited as a reference against appellant’s instant application. The only remaining question then, inasmuch as Ladisch admittedly discloses the method used by appellant, is whether it would require invention to apply the Ladisch method to the molten glass defined by the appealed claims.
The supplementary references cited by the examiner both show that glass or other molten mineral compositions might be turned into fibers or “wool” by the action of blasts of gases blown at high velocity through nozzles conjointly with a flowing stream of the molten material. .For purposes of the decision a more exhaustive consideration of the references is therefore deemed unnecessary.
Appellant does not assert that invention resides in the discovery that glass may be fiberized by air or steam blasts. The import of his argument is that resin technology and glass technology are non-analogous arts, and that invention is involved in applying a method used with resin to one used with glass. On that point we are not convinced that applying the Ladisch method for use with resin to one for similar use with glass would be beyond the scope of one skilled in the art. The very statements made by appellant before the Board of Appeals negative any such holding:
* # * '¿’he physical behavior of glass and resins is similar in some respects, but dissimilar in most respects. Whether glass would behave like a resin in a basically new melt-spinning process found workable for resins was a priori unpredictable, and it was a source of gratification and pleasant surprise * * * that the process did work with glass. [Emphasis added.]
The statement quoted above refutes the contention that it would be unobvious to one skilled in the art to try the Ladisch patent with glass as a starting material.
Before this court appellant relies upon the case of Plax Corp. v. Elmer E. Mills Oorp., 106 F. Supp. 399, which case was later affirmed in part and reversed in part (C. C. A. 7) 204 F. (2d) 302. There several patents for blowing “holloware,” consisting of bottles, from certain resinous materials were challenged as invalid in view, among others, of prior patents in the glass bottle industry.
A critical analysis of that decision establishes it has no controlling-effect whatever on the case at bar. Moreover, we have likewise directed our attention to each and every aspect of the board’s decision and have found no error therein. We therefore affirm the board’s decision without further and unnecessary comment.

 § 253. Disclaimer. * * *
In like manner any patentee or applicant may disclaim or dedicate to the public the entire term, or any terminal part of the term, of the patent granted or to be granted.

 The cited authorities in the case at bar appear to support the position of the Solicitor of the Patent Office:
* * * section 253 was intended to remedy certain difficulties under the prior law encountered when an applicant, due to factors beyond his control, could not cause related applications to issue on the same day. * * *
However, while the disclaimer has the effect of permitting less close scrutiny of the distinctions between claims issuing, to an applicant in separate patents, it was not, and could not have .been the legislative intent to permit indiscriminate issuance of numerous patents directed to mere colorable variations of the same idea. - Nothing in the statute or its legislative history suggests abandonment of the settled rule of Underwood v. Gerber, 149 U. S. 224, forbidding more than one patent for what is obviously only one invention, whether or not the grants expire on the same day.