**The STERLING VARNISH COMPANY, Plaintiff,**

v.

**The LOUIS ALLIS COMPANY, Defendant.**

**Civ. A. No. 5113.**

United States District Court
E. D. Wisconsin.
March 19, 1957.

the monopoly granted under letters patent '538 would correspond with the date of expiration of the monopoly granted under letters patent '180. It is the claim of plaintiff in this motion that since the disclaimer effectuates an identical expiration date for the two patents in question, there is no longer any extension of monopoly beyond the period allowed by law. The plaintiff further alleges that the disclaimer makes moot the question of double patenting; that this court should now hold that claims 2 and 7 of letters patent '538 are valid and infringed and should grant judgment to the plaintiff.

The disclaimer statute under consideration is Title 35 U.S.C.A. § 253, which provides:

> " * * * any patentee or applicant may disclaim or dedicate to the public the entire term, or any terminal part of the term, of the patent granted or to be granted."

Plaintiff claims that section 253 was enacted as a cure for situations involving double patenting. Plaintiff in its brief quoted from the Commentary On The New Patent Act by P. J. Federico appearing in Title 35 U.S.C.A.:

> "The second paragraph of section 253 is new and provides that 'in like manner' a patentee may disclaim, or dedicate to the public, the entire term or any terminal part of the term, of a patent, and such action may also be taken by the applicant before the patent is granted. The Patent Office has interpreted the phrase 'in like manner' as including the payment of a fee as required in the first paragraph, see Rule 21(8). Under this provision a patentee, either before or after the issue of the patent, may, for example, disclaim the last two or three years of the term of the patent, or may disclaim all the term of the patent after a specified date. No specific reason for this provision appears in the printed record, but its proponents contemplated that it might be effective *in some instan-*

---

Fulton B. Flick, Pittsburgh, Elwin A. Andrus and George Wallace of Andrus & Sceales, Milwaukee, Wis., for plaintiff.

Ira Milton Jones and James R. Custin, Milwaukee, Wis., for defendant.

GRUBB, District Judge.

This case is before the court on the motion of the plaintiff for an order modifying this court's decision of November 7, 1956, reported in 145 F.Supp. 810. In the decision of November 7, 1956, this court held that claims 2 and 7 of plaintiff's patent 2,417,538, hereinafter referred to as letters patent '538, were void for double patenting. It was the opinion of the court that claims 2 and 7 of letters patent '538 were for the same invention as that claimed in letters patent 2,411,180, hereinafter referred to as letters patent '180.

Shortly after the court handed down its decision, plaintiff filed a disclaimer in the patent office whereby it disclaimed a terminal portion of the term of the patent in suit, letters patent '538, so that

ces, in combatting a defense of double patenting, to permit the patentee to cut back the term of a later issued patent so as to expire at the same time as the earlier issued patent and thus eliminate any charge of extension of monopoly." (Emphasis supplied.)

It should be noted that it was the author's observation that section 253 might be effective "in some instances". It was apparently not the opinion of the author that section 253 would be effective in all cases of double patenting.

Section 253 was enacted in 1952. Its effect and scope have not been delineated by the courts. The only case which the court has been able to find interpreting section 253 is Application of Siu, Cust. & App.1955, 222 F.2d 267, 269. The facts disclose that one Ladisch and Siu were members of a research team; that their experiments resulted in improvements in the field of the making of glass wool and similar products made from resins; that Ladisch filed an application for a patent regarding resinuous material and that subsequently Siu filed an application for a patent using glass to produce a wool-like substance. Ladisch's patent issued, whereupon the patent examiner refused to approve Siu's application in view of Ladisch's patent. Siu then submitted to the board, under 35 U.S.C.A. § 253, a formal disclaimer of any part of his patent which would extend beyond the expiration date of the Ladisch patent. The court cited with approval the opinion of the board relating to the disclaimer.

" ' * * * It is apparently appellant's view that a disclaimer of the character presented would avoid one of the familiar evils of double patenting, that of extension of monopoly, and accordingly that the rejection based on the Ladisch patent should no longer be insisted on. The evils of double patenting where the two patents *do not issue on the same date* include that of extension of monopoly *but this is not the only objection to double patenting*. The pertinent statutes do not, in our opinion, warrant the allowance of more than one patent for a single invention independently of the question of extension of monopoly. (Citation) The essential issue here is one of whether or not the claims represent a distinct and patentable invention, * * * ' " (Emphasis and parenthesis supplied)

In a footnote, the court cited with approval the following:

" ' * * * section 253 was intended to remedy certain difficulties under the prior law encountered when an applicant, due to factors beyond his control, could not cause related applications to issue on the same day. * * *

" 'However, while the disclaimer has the effect of permitting less close scrutiny of the distinctions between claims issuing to an applicant in separate patents, it was not, and could not have been the legislative intent to permit indiscriminate issuance of numerous patents directed to mere colorable variations of the same idea. Nothing in the statute or its legislative history suggests abandonment of the settled rule of Underwood v. Gerber, 149 U.S. 224, 13 S.Ct. 854, 37 L.Ed. 710, forbidding more than one patent for what is obviously only one invention, whether or not the grants expire on the same day.' "

The court finds the language of the Siu case most persuasive.

Plaintiff has cited a line of decisions, including Deister Concentrator Co. v. Deister Mach. Co., 7 Cir., 1920, 263 F. 706. Those decisions involved a common factual ingredient—the patents in question issued from the patent office on the same day. In none of the cases was a disclaimer filed after an opinion had been handed down by a court.

Whatever the rule may be as to patents which issue on the same day, and the language in the Siu case, supra, would indicate that such a situation is

an anomoly, the following cases indicate that two patents may not issue for the same invention.

In In re Copeman, 1943, 135 F.2d 349, 350, 30 C.C.P.A., Patents, 962 the court stated:

"Ordinarily a copending patent of an applicant is not a proper reference against an application, but it is axiomatic that in order that two patents may be granted there must be two inventions * * * It is generally recognized that in order that a later issued patent may be valid, it must disclose patentable subject matter over the first patent issued. * * *

"The law is well-settled that one may not have two patents for the same invention. *One reason for this rule* is that * * * the monopoly of a single invention might be * * * greatly extended." Emphasis supplied)

It should be noted that the court stated that extension of the monopoly was *one reason*. That court did not say it was the *only reason*.

Possibly the leading case on double patenting is Miller v. Eagle Mfg. Co., 1894, 151 U.S. 186, 14 S.Ct. 310, 314, 38 L.Ed. 121. In that case two patents were issued to one patentee. With reference to the defense of double patenting the court stated:

"(If) * * * they should be considered as covering the same invention, then the later must be declared void, under the well-settled rule that two valid patents for the same invention cannot be granted either to the same or to a different party." (Parenthesis supplied)

" * * * *the power to create a monopoly is exhausted by the first patent, and* for the *further reason* that a new and later patent for the same invention would operate to extend or prolong the monopoly beyond the period allowed by law." (Emphasis supplied)

■ The court did not say that a second patent for the same invention was invalid *only* because the monopoly would be extended, but it definitely stated that the power to create a monopoly had been exhausted by the issuance of the first patent. If this principle be applied to the instant case, the plaintiff's disclaimer avails it nothing because the power to create a monopoly through the second patent which was sued upon was exhausted by the issuance of its first patent.

It is the opinion of this court that plaintiff's disclaimer is legally insufficient to change the opinion of this court dated November 7, 1956 for the reason that the power to create a monopoly was exhausted by the issuance of letters patent '180. As a result, letters patent '538 is void. It is further apparent to the court that extension of monopoly is not the only evil of double patenting; that while plaintiff's disclaimer might correct an extension of monopoly, it does not correct other evils inherent in double patenting.

If the court were to agree with the plaintiff's contention in this motion, it could envision a situation wherein a more wealthy established patentee, holding two or more patents for the same invention, could force a poorer competitor practically out of business by bringing successive suits on each of its patents. The fact that the first patent sued upon was held invalid would not lessen the harassment value of the remaining patent or patents. This is merely one of the possible evils which the court believes would result from allowing a multiplicity of patents for the same invention.

If double patenting were to be allowed and held valid where there is a disclaimer of the terminal portion under the 1953 statute, a very ready means would be supplied whereby persons could get around the effect of file wrapper estoppel. One such way would be to file a new application, eliminating the abandoned parts. If such patent were inadvertently issued by the patent office, and was not void for double patenting, suit could be brought on the second patent. The de-

fense of file wrapper estoppel would be eliminated. Other situations are conceivable where uncertainties and litigation could be caused by any such rule.

The provision in the old statute, R. S. Sec. 973; U.S.C., Title 28, Section 821,* expressly contemplates disclaimers even after suit has been brought. No such provision was put in section 253, Title 35, in the 1952 enactment.

The alleged infringing acts here took place prior to September 5, 1950, the date of the filing of the complaint in this action. Section 253, here relied upon, was passed in 1952. At that time the issues in this case had long since been fixed. What plaintiff is here asking is that a new and different question be decided, one which was not before the court and on which testimony was not taken.

Plaintiff's motion to modify the decision of November 7, 1956 is hereby denied.

Defendant has moved for a rehearing on the question of allowance of attorney fees. Nothing has been presented which in any way changes the court's opinion in that respect. That motion is hereby denied.

---

* 1948 Revision, 28 U.S.C. § 1928.