**QUAD ENVIRONMENTAL TECHNOLOGIES CORPORATION,**
Plaintiff–Appellant,

v.

**UNION SANITARY DISTRICT, and A.P.T., Inc., a California Corp. d/b/a Calvert Environmental, Inc., Defendants–Appellees.**

No. 91–1027.

United States Court of Appeals, Federal Circuit.

Oct. 8, 1991.

Suggestion for Rehearing In Banc Declined Dec. 13, 1991.

Alan E.J. Branigan, Griffin, Branigan & Butler, of Arlington, Virginia, argued for plaintiff-appellant. With him on the brief was George C. Kurtossy, Arlington, Va. Also on the brief were Neil A. Smith and Virginia S. Medlen, Limbach, Limbach & Sutton, San Francisco, Cal., of counsel.

Charles A. Laff, Laff, Whitesel, Conte & Saret, Chicago, Ill., argued for defendant-appellee. With him on the brief were Robert F.I. Conte, William P. Waters, Judith L. Grubner and John T. Gabrielides, Chicago, Ill. Also on the brief were Thomas O. Herbert and Richard P. Doyle, Flehr, Hohbach, Test, Albritton & Herbert, San Francisco, Cal., of counsel.

Before NEWMAN and PLAGER, Circuit Judges, and MILLER, Senior Circuit Judge.

PAULINE NEWMAN, Circuit Judge.

Quad Environmental Technologies Corporation appeals the summary judgment of the United States District Court for the Northern District of California, holding all

the claims of the patent in suit invalid on the basis of obviousness.[1] The district court did not reach the issues of infringement and inequitable conduct, deeming them mooted.

We conclude that summary judgment was improvidently granted, based on errors of law. Since material disputed facts require resolution, we reverse the grant of summary judgment and remand for trial.

### Summary Judgment

The process of summary judgment is a salutary means of avoiding an unnecessary trial when the movant is clearly entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The burden of establishing entitlement to summary disposition is with the movant, with due consideration to the presumptions and burdens that characterize the issues in dispute. *Anderson*, 477 U.S. at 254, 106 S.Ct. at 2513; *H.H. Robertson Co. v. United Steel Deck, Inc.*, 820 F.2d 384, 388, 2 USPQ2d 1926, 1928 (Fed.Cir.1987). The reviewing court must determine for itself whether the requirements for summary judgment were met. *Id.*

 When the issue is patent invalidity due to obviousness, 35 U.S.C. § 103, the movant must overcome the statutory presumption of validity, 35 U.S.C. § 282, by proving obviousness by clear and convincing evidence based on undisputed facts. All factual inferences must be drawn in favor of the opponent of the motion. *Anderson*, 477 U.S. at 255, 106 S.Ct. at

2513; *Cooper v. Ford Motor Co.*, 748 F.2d 677, 679, 223 USPQ 1286, 1288 (Fed.Cir. 1984). Although patent issues are as amenable to summary resolution as other matters, when material facts are disputed, and testimonial, documentary, and expert evidence are needed for their resolution, summary adjudication is not indicated. Such is here the case.

### The Reexamination Proceedings

United States Patent No. 4,238,461 (the '461 patent) was issued December 9, 1980 to inventor Egbert deVries, and assigned to Quad. The '461 patent describes and claims a method of removing odors from dry waste gas streams. Quad requested reexamination of the '461 patent and, concurrently, of an earlier-filed deVries patent on waste treatment, U.S. Patent No. 4,125,589 issued November 14, 1978 (the '589 patent). The '589 patent describes and claims a method of removing odors from wet waste gas streams.

The patent examiner granted Quad's reexamination request as to the '461 patent and denied the request as to the '589 patent. By granting reexamination the examiner determined, in the words of 35 U.S.C. § 303, that "a substantial new question of patentability" was raised.[2] The Reexamination Order cited certain new references under 35 U.S.C. § 103. The Order also stated that the '589 patent was a reference against the '461 invention under 35 U.S.C. § 102(a)[3] and raised new questions under "both 35 U.S.C. 103 and the judicially-created doctrine of obvious [type] double patenting".

Quad responded to the Reexamination Order pursuant to 35 U.S.C. § 304,[4] and

---

1. *Quad Environmental Technologies v. Union Sanitary District*, No. C–88–1806, 1990 WL 288711 (N.D.Cal. September 20, 1990).

2. 35 U.S.C. § 303(a).
 Within three months following the filing of a request for reexamination ... the Commissioner will determine whether a substantial new question of patentability affecting any claim of the patent concerned is raised by the request....

3. 35 U.S.C. § 102.

A person shall be entitled to a patent unless—
 (a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent....

4. 35 U.S.C. § 304.
 ... The patent owner will be given a reasonable period ... within which he may file a statement on such question, including any amendment to his patent and new claim or

filed proposed amendments to some of the claims, to distinguish the newly cited references. Quad argued that the '461 invention was not obvious from the teachings of the '589 patent, pointing out technological differences. In order to "obviate" the issue of obvious-type double patenting Quad filed a terminal disclaimer, disclaiming that portion of the term of the '461 patent which extended beyond the expiration date of the '589 patent.[5]

The examiner held that the terminal disclaimer resolved the issue of obvious-type double patenting. The examiner also stated that he had been in error in deeming the '589 patent to be prior art against the '461 invention, since the '589 patent was filed by the same inventor less than one year before the filing date of the '461 patent. *See In re Katz*, 687 F.2d 450, 454, 215 USPQ 14, 17 (CCPA 1982). The '589 patent thus had no further role in the reexamination. The merits of the question of obviousness of the '461 claimed invention over the '589 patent's teachings were not decided during the reexamination proceedings.

After additional exchanges between the applicant and the examiner, not here relevant, all objections were withdrawn. One claim of the '461 patent was cancelled and other claims were added or amended. A Reexamination Certificate was issued, affirming patentability of the claims in the form resulting from reexamination.

### The District Court Proceedings

Quad sued Union Sanitary District and its supplier A.P.T., Inc. d/b/a Calvert Environmental, Inc. (collectively herein "Union") for direct and contributory infringement of the reexamined '461 patent. The district court granted Union's motion for summary judgment of invalidity for obviousness under 35 U.S.C. §§ 102(b)/103. The motion was based on Quad's pre-trial stipulation that the invention of the '589 patent was in commercial use at the Montfort Packing Company plant in 1977, and that this process ("the Montfort process") was prior art against the '461 patent.

The district court did not review whether the Montfort process made obvious the invention of the '461 patent. The court held, instead, that Quad's filing of the terminal disclaimer to obviate the double patenting issue was an admission that the '461 patent claims were obvious in view of the '589 patent disclosure. The court thus held that Quad was estopped from arguing that the '461 claims were unobvious in view of the Montfort process which, Quad had admitted, embodied the invention of the '589 patent.

The court erred in law, reflecting an apparent misperception of the reexamination proceedings, as well as the premises of a terminal disclaimer.

### The Terminal Disclaimer

■■■ A rejection for obvious-type double patenting means that the claims of a later patent application are deemed obvious from the claims of an earlier patent. *In re Longi*, 759 F.2d 887, 893, 225 USPQ 645, 648 (Fed.Cir.1985); *In re Braithwaite*, 379 F.2d 594, 600, 54 CCPA 1589, 154 USPQ 29, 34 (CCPA 1967). Such situations may arise when developments and improvements are made as the inventor or persons associated with the inventor continue to work in the field of an invention. Voluntary limitation of the term of the later-issued patent is a convenient response to an obvious-type double patenting rejection, when the statutory requirement of common ownership is met. Any possible enlargement of the term of exclusivity is eliminated, while enabling some limited protection to a patentee's later developments.

■■■ Only the claims are compared in a rejection for double patenting. Such a re-

---

claims he may wish to propose, for consideration in the reexamination. . . .

**5.** 37 C.F.R. § 1.321.
 (b) A terminal disclaimer, when filed in an application to obviate a double patenting rejection, must . . . include a provision that any patent granted on that application shall be enforceable only for and during such period that said patent is commonly owned with the application or patent which formed the basis for the rejection.

jection by the patent office does not mean that the first-filed patent is a prior art reference under § 102 against the later-filed application. *In re Bowers*, 359 F.2d 886, 887, 53 CCPA 1590, 149 USPQ 570, 572 (CCPA 1966). Thus the "obviation" of obvious-type double patenting by filing a terminal disclaimer has no effect on a rejection under § 103 based on the first-filed patent. Such a rejection can not be overcome by a terminal disclaimer. *Bowers*, 359 F.2d at 891 n. 7, 149 USPQ at 575 n. 7.[6] A reference patent that is not of common ownership, or a publication or public use or sale more than one year before the filing date of the later-filed application, can not be removed as prior art by the filing of a terminal disclaimer. *In re Bartfeld*, 925 F.2d 1450, 1453–54, 17 USPQ2d 1885, 1888 (Fed.Cir.1991); *In re Fong*, 378 F.2d 977, 979–80 n. 1, 54 CCPA 1482, 154 USPQ 25, 27 n. 1 (1967).

■ Thus, a terminal disclaimer is of circumscribed availability and effect. It is not an admission of obviousness of the later-filed *claimed* invention in light of the earlier-filed *disclosure*, for that is not the basis of the disclaimer.

■ The district court, explaining its decision, referred to two other district court decisions that arose on somewhat similar facts. In *Gemveto Jewelry Co. v. Jeff Cooper, Inc.*, 568 F.Supp. 319, 219 USPQ 806 (S.D.N.Y.1983), *on retrial*, 694 F.Supp. 1085 (S.D.N.Y.1988), *aff'd. mem.* 884 F.2d 1399 (Fed.Cir.1989), the district court held that by filing the terminal disclaimer instead of contesting obviousness, the patentee was estopped from contesting obviousness when confronted with a prior sale of the same product that was described and claimed in the earlier-filed patent. The district court found that the prosecution history left "no room to doubt that plaintiff admitted the obviousness of the later patent". 568 F.Supp. at 327, 219 USPQ at 811. In a nonprecedential, unpublished memorandum opinion the Federal

Circuit affirmed the district court's judgment. We stress that such unpublished opinions are not to be taken as our adoption of the district court's reasoning; affirmance could have been on any ground appropriate to the case.

Another district court, in *Salomon S.A. v. Rossignol Ski Co., Inc.*, 715 F.Supp. 1274, 1281–82, 11 USPQ2d 1589, 1595–96 (D.Del.1989), declining to follow *Gemveto*, held that the filing of a terminal disclaimer did not operate as an estoppel against contesting the merits of a later obviousness issue. The court instead held that the filing of the terminal disclaimer presented a rebuttable presumption of acquiescence in the rejection for obviousness. As the district court commented in the case at bar, neither Quad nor Union has endorsed this analysis.

■ We do not adopt the reasoning of the district court in either *Gemveto* or *Salomon*, although we recognize that these decisions may find support in their particular facts. In legal principle, the filing of a terminal disclaimer simply serves the statutory function of removing the rejection of double patenting, and raises neither presumption nor estoppel on the merits of the rejection. It is improper to convert this simple expedient of "obviation" into an admission or acquiescence or estoppel on the merits. Analogy is seen in *Greenwood v. Hattori Seiko Co., Ltd.*, 900 F.2d 238, 240–41, 14 USPQ2d 1474, 1475–76 (Fed.Cir. 1990), where this court declined to find estoppel based on the examiner's rejection for obviousness, when this rejection had been obviated, during prosecution of the patent application, by the filing of a Rule 131 affidavit (37 C.F.R. § 1.131). The district court found at trial that the Rule 131 affidavit was inadequate to remove the references, and on appeal we agreed. We held, however, that the references did not thereby automatically invalidate the patent, merely because the applicant had not argued the merits of the rejection before the

---

6. Nor can a terminal disclaimer be used to overcome a double patenting rejection when the claimed inventions are identical. *In re Van Ornum*, 686 F.2d 937, 942, 214 USPQ 761, 765– 66 (CCPA 1982); *Bowers*, 359 F.2d at 892, 149 USPQ at 576; *In re Robeson*, 331 F.2d 610, 615, 51 CCPA 1271, 141 USPQ 485, 488–89 (1964). However, that was not the issue here.

examiner but had instead invoked Rule 131 to remove the references. *See also Paperless Accounting, Inc. v. Bay Area Rapid Transit System*, 804 F.2d 659, 663–64, 231 USPQ 649, 652 (Fed.Cir.1986), *cert. denied*, 480 U.S. 933, 107 S.Ct. 1573, 94 L.Ed.2d 764 (1987) (no presumption of acquiescence in the merits of the rejection by refiling the application).

In the case of the '461 patent, the prosecution history of the original patent shows that the '589 patent was cited by the examiner, and the '461 patent specification expressly distinguishes the '589 teachings, thus supporting Quad's position that it did not admit the obviousness of the '461 invention in view of the '589 patent when the terminal disclaimer was filed during reexamination. There was no reexamination on the merits of obviousness in view of the '589 patent, for the examiner withdrew the '589 patent as prior art; and, as discussed *post*, the Montfort commercial use was not within the reexamination examiner's jurisdiction. The district court erred in holding that Quad was estopped from contesting the merits of the obviousness of the claims in suit in view of the Montfort process.

### The Montfort Process

It was stipulated that the Montfort process embodied the invention of the '589 patent and was in commercial use more than a year before the filing of the '461 patent.

The district court appeared to believe that disclosure of the use at Montfort was wrongly withheld from the patent examiner during reexamination. However, questions of public use and on sale were explicitly excluded by statute from those issues on which reexamination could be obtained. The Manual of Patent Examining Procedure (M.P.E.P.) then in effect provided:

§ 2216. ... Questions relating to grounds of rejection other than those based on prior patents or printed publications, such as public use, or sale ... should not be included in the request and will not be considered by the Examiner if included....

§ 2217. ... Admissions by the patent owner as to matters affecting patentability may be utilized in a reexamination proceeding....

§ 2258. ... Rejections [on reexamination] will not be based on matters other than patents or printed publications, such as public use or sale.... A rejection on prior public use or sale ... cannot be made even if it relies upon a prior patent or printed publication....

M.P.E.P. (5th ed., Rev. 2, Dec. 1985). Union asserts that under § 2217 the examiner could have based reexamination on an admission of the Montfort use. We do not agree, for the several provisions of the M.P.E.P. then in effect, fairly read in light of Board decisions, prohibited consideration of prior use or sale.[7] The conclusion follows that Quad is not now barred from defending validity on this ground.

We conclude that Quad is not estopped from arguing this issue in the district court, and that the court is required to make an independent review of the patentability of the '461 claims over the Montfort process. As discussed in *Greenwood v. Hattori*:

In an infringement suit before a district court, the invalidity of a patent un-

---

7. The congressional purpose in restricting reexamination to printed documents, 35 U.S.C. § 301, was to provide a cheaper and less time-consuming alternative way to challenge patent validity on certain issues. H.R.Rep. No. 1307, 96th Cong., 2d Sess. 4, *reprinted in,* 1980 U.S.Code Cong. & Admin.News 6460, 6463. *See generally* R. Tegtmeyer, *Policy Issues on Implementing Reexamination,* 9 AIPLA Quarterly J. 214 (1981).

§ 2217 was revised in 1989 (after the reexamination of the '461 patent) to allow consideration of admissions of public use or sale:

An admission relating to *any* prior art (i.e., on sale, public use, etc.) established in the record or in court may be used by the examiner in combination with patents or printed publications in a reexamination proceeding.

M.P.E.P. § 2217 (5th ed., Rev. 12, July 1989) (emphasis in original) (implementing *Ex Parte McGaughey,* 6 USPQ2d 1334, 1337–38 (Bd.Pat. App. & Int.1988) (an examiner during reexamination may make use of information already established in the record)).

der 35 U.S.C. § 103 must be decided on the basis of prior art adduced in the proceeding before the court. The issue cannot be decided merely by accepting or rejecting the adequacy of the positions taken by the patentee in order to obtain a Certificate of Reexamination for the patent.

900 F.2d at 240, 14 USPQ2d at 1476. *See In re Etter*, 756 F.2d 852, 858, 225 USPQ 1, 5 (Fed.Cir.) (*en banc*), *cert. denied*, 474 U.S. 828, 106 S.Ct. 88, 88 L.Ed.2d 72 (1985) (reexamination proceedings "should not circumvent the burden placed on an infringer during litigation"). The courts are the final arbiter of patent validity and, although courts may take cognizance of, and benefit from, the proceedings before the patent examiner, the question is ultimately for the courts to decide, without deference to the rulings of the patent examiner.

Since no estoppel pertains, the summary judgment based thereon can not stand.

### *Frivolousness*

■ Union asserts that this appeal is frivolous, referring to the deficiencies of Quad's arguments and the virtues of its own. In view of the absence of precedent supporting the district court's decision and Quad's right to appellate review, Union's charge of frivolousness is an unwarranted burden on the proceedings and the court. We caution that demands for sanctions must be adequately supported, lest they add to abuse of the adjudicative process.

### *Costs*

Costs are taxed in favor of Quad.

REVERSED AND REMANDED.