55 CCPA

## Application of Friedrich Karl KNOHL and Nels Nelsson.

### Patent Appeal No. 7832.

United States Court of Customs
and Patent Appeals.
Nov. 16, 1967.

Olson, Trexler, Wolters & Bushnell, Chicago, Ill., Charles L. Sturtevant, Washington, D. C. (Richard Bushnell, Chicago, Ill., of counsel), for appellants.

Joseph Schimmel, Washington, D. C. (Fred W. Sherling, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, RICH, SMITH, ALMOND, Judges, and WILLIAM H. KIRKPATRICK.*

WORLEY, Chief Judge.

This appeal is from the decision of the Board of Appeals affirming the ex-aminer's rejection of claims 1–3 in appellants' application [1] for "Plasterboard Fastening Screw."

The sole ground of rejection is "double patenting" in view of the claims of appellants' patent No. 3,056.234.[2] To place the case in perspective with respect to the numerous other double patenting rejections appealed to this court of late, it is apparent from the letters of the examiner and decision of the board that they regard appellants to be claiming the same invention in their application claims as is defined by their patent claims. Appellants, on the other hand, are of the opinion that the description and claims of their patent contain references to specific details of a "particular species" of appellants' "generic invention" [3] disclosed and claimed in the present application; that there is a "clear line" of demarcation between the "distinctly different" combinations of elements recited in the appealed claims and patent claims; and that, in view of a terminal disclaimer seasonably filed under 35 U.S.C. § 253 by them and assented to by their assignee, the board erred in failing to apply the decisions of this court in In re Robeson, 51 CCPA 1271, 331 F.2d 610; In re Kaye, 51 CCPA 1465, 332 F.2d 816; and in re Heinle, 52 CCPA 1164, 342 F.2d 1001.

With that background, we turn to a discussion of the application and patent, and the rejections and arguments made.

The subject mater disclosed in both the application and patent is a screw for fastening wallboard to a metal frame or stud member. In the patent, appellants state that the use of prior art screw fasteners to fasten plasterboard to stud members resulted in tearing or bulging of

---

* Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

1. Serial No. 296,280, filed July 19, 1963, as a continuation of application Serial No. 763,228, filed September 25, 1958.

2. Issued October 2, 1962, on application Serial No. 829,838, filed July 27, 1959, as a continuation-in-part of application Serial No. 763,228, supra. That patent,

of course, does not have the status of statutory "prior art" under 35 U.S.C. §§ 102 and 103 insofar as appellants are concerned.

3. As we noted in In re Christensen, 51 CCPA 1236, 330 F.2d 652, characterization of the claims as "generic" and "specific" does not necessarily resolve the issue of whether the inventions defined by the claim language are the same.

the paper covering of the gypsum core wallboard where it was contacted by the periphery of the screw head. In general, the screw disclosed in each of the specifications includes a tip provided with means, such as a slot, for drilling and threading an aperture in the wallboard and frame member; a shank provided with helical threads and roots spaced sufficiently far apart axially to prevent crumbling or reaming as the screw passes through the gypsum, the crest diameters of the threads progressively decreasing at the tip or leading edge of the shank; and a head portion designed in a manner to "spin" or "deform" the paper surface of the plasterboard inwardly without tearing or bulging and to enable the head to be embedded within the wallboard for later covering with an appearance-improving spackling composition.

The subject matter is perhaps best understood with reference to the respective claims, to which we have added numerals keyed to the drawings representative of those appearing in the application and patent.

Application claim 1 reads (Breakdown lettering ours):

    1. A screw fastener [10] of the type described especially suitable for securing to a support [14], plasterboard panels [18] and the like having a covering layer such as paper [12], said fastener comprising

(A)  an elongated shank [24] having

(B)  a tapering entering end portion providing a work penetrating tip, cutting edge means [34] on said tapering entering end portion and extending generally axially and laterally outwardly from adjacent said tip for drilling an aperture in said panel and support during application of the screw fastener,

(C)  and a head portion [36] of substantial outer diameter formed

integral with the opposite end of said elongated shank,

(A₁)  helical thread convolutions [26] having axially spaced apart roots integral with and extending along said shank, said portion of thread convolution extending along said tapering end portion and progressively decreasing in diameter toward said tip,

(C₁)  said head portion having a clamping section including a circumferential work engaging surface [38] flaring at a relatively small angle with respect to the longitudinal axis of the screw radially outwardly from the shank portion adjacent thereto and flaring outwardly at increased angularity [40] with respect to said fastener axis adjacent to the outer periphery of the head portion,

(C₂)  said outer periphery presenting a circumferential circular substantially cylindrical uninterrupted surface of substantial but limited axial extent and having axially spaced annular margins of substantially similar diameters,

(C₃)  said head portion being provided with a recess [42] extending axially into said head portion and encompassed by the outer periphery thereof for accommodating a suitable turning tool,

(C₄)  the deposition and extent of said flaring circumferential clamping surface and said outer peripheral head surface of limited axial extent being such as to counteract the tendency of the outer margin of said head portion to shear the outer surface structure of a complementary workpiece, as for example, the paper covering of plasterboard panelling when said head portion embeds

itself in the workpiece as an incident to rotation of the fastener.

*Fig. 1.*

Claim 6 of the patent reads:

6. A rotary type fastener [13] for use in securing to a supporting member [12] a panel having a deformable inner body [14] as for example gypsum material and an exposed overlying layer of sheet material [15] such as paper, said fastener comprising

(A) an elongated threaded [23] shank [17] having

(B) a pointed leading end [21] for penetrating a panel and supporting member, said point being coaxial with the fastener rotary axis,

(C) and a head [18] formed at the trailing end of said shank;

($C_2$) said head including a terminal section [25] concentric with the fasteners rotary axis and having an uninterrupted generally cylindrical surface configuration ["d," Fig. 4] of an axial extent from about .005″ to about .02,″

($C_3$) said terminal section also having an exposed end surface [24] positioned within the confines of a transverse plane which includes the margin determined by the intersection of said end surface with said generally cylindrical surface, said head being provided with a rotary-driving-tool accommodating recess intersecting only said exposed end surface and extending therefrom axially of said fastener and terminating within said leading section,

($C_1$) said head also including an uninterrupted leading section having an axial extent ["E," Fig. 4] from said terminal section of from about .06″ to about .14″ and interconnecting with said terminal section at an angle ["B," Fig. 4] from about 5° to about 25° with respect to a plane taken perpendicular to the fastener rotary axis and interconnecting with said shank trailing end at an angle ["C," Fig. 4] from about 23° to about 50° with respect to a plane taken parallel to the fastener rotary axis, said leading section having an advancing first portion [33], the surface configuration of which flares gradually outwardly from said shank trailing end and having a maximum diameter greater than the crest diameter of the threads on said shank end, and a trailing second portion [32], the surface configuration of which flares outwardly from the maximum diameter of said first portion at a greater rate than said first portion and terminates at the generally cylindrical surface of said head terminal section, said flaring surfaces of the leading section being concentric with the fastener rotary axis and presenting a smooth spinning and clamping circumferential area extending from said terminal section to said shank trailing end; said shank, the penetrating

point thereof, and said head being concentric with the rotary axis of said fastener

(C₄) whereby the flaring surfaces of said leading section of the head are adapted to exert a spinning and clamping force against the exposed surface of the panel upon said fastener being progressively rotatably driven into panel embedded relation in a direction normal to the exposed panel surface without injury thereto.

In rejecting the appealed claims in view of the patent claims, the examiner stated:

\* \* \* Considering patent claim 6 as an exemplary claim and comparing it with application claim 1 it is believed to be clear that the claims in fact define the same screw in terms of varying scope. For example, the point defined in claim 1 of this application \* \* \* [at (B)] and the threads defined \* \* \* [at (A₁)] find their counterpart \* \* \* [at (B) and (A) in] the patent [claim]. The flaring head set forth \* \* \* [at (C₁) in] claim 1 corresponds to the head configuration defined \* \* \* [at (C₁) in] the patent [claim]. The cylindrical portion appearing \* \* \* [at (C₂) in] claim 1 is set forth in the patent [claim at (C₂)]. The tool recess claimed here \* \* \* [at (C₃) in] claim 1 is defined in a similar manner \* \* \* [at (C₃) in] the patent [claim]. And finally the function of this head configuration as described \* \* \* [at (C₄) in] claim 1 is described in a similar manner \* \* \* [at (C₄) in] the patent [claim].

In view of his conclusion that the patent and application claims are drawn to the same invention, the examiner refused to give appellants' terminal disclaimer any effect.

The board agreed, adding:

\* \* \* While we agree with the appellants that it is possible for a novel screw or any other device to contain a plurality of separate and \* \* \*

distinct inventions which may properly be presented in separate applications even in the event the disclosures in the separate applications are identical, this we do not find to be the case here * * *. The only invention present has been exhausted by the claims in the patent. * * *

Appellants' argument is premised principally on their view that the application claims and patent claims 5–8 particularly relied upon by the Patent Office are directed to distinctly different combinations of elements. Clearly that is not the case, for each is directed to a screw fastener including what appears to be the same tapered, work-penetrating tip, the same elongated threaded shank (necessarily, it would seem, having axially spaced roots), and the same head portion having a configuration designed to prevent mutilation of the paper covering as the screw is driven into the wallboard supporting structure. Appellants have presented no argument to persuade us that, in the present circumstances, a difference between the sets of claims in the scope of the language employed to describe the various portions of the screw necessarily results in different inventions being defined by those claims. Nor is there anything in the patent disclosure, issued on a later filed application, to suggest that any portion of the screw structure disclosed and claimed therein is in any manner different from, or an improvement on, the corresponding structure disclosed and claimed in the present application.

We are satisfied that the board committed no reversible error in sustaining the examiner's finding of but one patentable invention delimited by the patent and application claims. Under the circumstances, the terminal disclaimer filed by appellants does not obviate the double patenting rejection. In re Bridgeford, 53 CCPA 1182, 357 F.2d 679; In re Griswold, 53 CCPA 1565, 365 F.2d 834.

Affirmed.