55 CCPA

**Application of Harry Dudley WRIGHT.**

**Patent Appeal No. 7853.**

United States Court of Customs and Patent Appeals.

May 16, 1968.

Almond, J., and Worley, C. J., dissented.

---

Moore & Hall, Elliott I. Pollock, Washington, D. C., Reed C. Lawlor, Los Angeles, Cal., for appellant.

Joseph Schimmel, Washington, D. C. (Jere W. Sears, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and Judges RICH, SMITH, ALMOND, and KIRKPATRICK.*

Rich, Judge, delivered the opinion of the court:

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the rejection by the examiner of claims 1–8, all claims of application serial No. 265,315, filed March 12, 1963, entitled "Sectional Digital Selector Switch Construction."

This application is an optional "division"[1] of appellant's application serial No. 820,543 which issued as Patent No. 3,089,923 on May 14, 1963, 2 months after the filing of the application at bar. A terminal disclaimer[2] was filed after final rejection disclaiming the portion of the term of any patent issued on the application on appeal beyond the expiration date of said issued patent.

Patent 3,089,923 and the appealed application contain identical disclosures.[3]

The sole ground of rejection is "double patenting," all eleven claims of the patent being relied on.

The board stated that the only issue is double patenting and the effect of the terminal disclaimer.[4] As we read its opinion, it held the double patenting rejection to be supportable, notwithstanding the terminal disclaimer and our decisions in In re Robeson, 331 F.2d 610, 51 CCPA 1271, and In re Kaye, 332 F.2d 816, 51 CCPA 1465, both cited and pre-

---

* Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

1. The record does not show the whole prosecution history but the examiner stated, without refutation, that appellant initiated the filing of the divisional application which was not in response to a requirement for restriction or election of species, so that 35 U.S.C. § 121 has no applicability.

2. The usual simple form of disclaimer to "all of the term after May 14, 1980 of any patent that may be hereafter granted on the basis of said application, so that any such patent granted hereafter will expire at the same time as U. S. Letters Patent No. 3,089,923 which issued on May 14, 1963." Cf. In re Griswold, 365 F.2d 834, 53 CCPA 1565, footnote 5, for another form of disclaimer.

3. That is to say, the drawings and specifications are identical, not including any

claims as part of the disclosure and excluding the cross reference in the "divisional" application which says: "This is a divisional application of my co-pending patent application Serial No. 820,543. Now Patent No. 3, 089,923." There appears to be no cross reference in the issued but co-pending patent to the "divisional" application. See Rule 79.

4. The examiner "relied upon" only the Wright patent but he also cited as "Corroborative references" three other patents which he referred to in the course of the argument in his Answer. The board said it was not clear to it "of what they are alleged to be corroborative." While making certain presumptions as to why the examiner referred to these patents, the board did not rely on any of them to support its affirmance. We therefore find it unnecessary to consider them.

sumably considered by it, under 35 U.S.C. § 101 on the ground that the same invention is being claimed in the application at bar and in the issued patent. It said that the claims "are substantially the same," that the "claimed subject matter is identical in each instance and the difference in the claims is one of changed verbiage or of the breadth of definition of corresponding elements," and that "any difference between the *claimed subjects matter* \* \* \* is not apparent." It referred to the "identical disclosures" and "the equal portions of those disclosures that are the subject matter of the patent and application claims."

Appellant submits that exactly the opposite is true, that it is entirely possible to have two or more inventions described in a single disclosure, that two distinct inventions were described, and that the claims of the application are directed to subject matter which is distinct from that claimed in the patent. Clearly, therefore, our only task is to construe the claims and determine who is right. Preliminary to further discussion, it is necessary to explain what the nature of the subject matter is.

Figs. 1 and 6 of the patent drawings, which are the same as the application drawings, are here reproduced:

_FIG. 1._

_FIG. 6._

The invention is, or inventions are, embodied in a manually-operated digital switch the construction of which is such that any desired number of similar units

can be fastened together to display any desired number of digits and control as many circuits. In Fig. 1 a switch assembly of three units 10 is shown. Part of one unit is shown in side elevation in Fig. 6. It has a casing 14, 15, 16, 22 ("22" added as it does not appear in Fig. 6 but in other figures), like a shallow box, in which a thumbwheel or switching wheel 30 is rotatably mounted. The wheel has ten finger lugs 35 with intervening arcuate notches 34. The wheel has a rim or flange 36 on which indicia or "digits" from 0 to 9 are carried so that they appear in the windows 28 in each unit on the front of the switch, as the numbers "547" appear in Fig. 1, showing where the individual switching units are set. The curved spring detent 45 holds the wheel in its set position and also causes it to snap into position when manually rotated. Each wheel 30 carries the movable contacts, 80 for example, of the switch unit and the fixed contacts are carried by a circuit board of the so-called "printed" circuit type. The open side of the casing is closed by securing thereon, and over the switching wheel, the circuit board. As shown in Fig. 6, the circuit board 20, the one shown being that of the next adjacent unit, protrudes to the rear of the casing where the fixed contact terminals, not shown in this figure, are accessible for soldering connections. As many units 10 as are used are held together in a rigid assembly by through-bolts 44. Each unit has a lip at the front end, extending to one side as shown at 26 in Fig. 1, which interlocks with the adjacent unit. When the desired number of units is assembled, the assembly may be finished off by metal end plates 12, Fig. 1, by which the assembly can be panel mounted, the end plates having flanges 24 with screw holes 58.

The specification appears to fall into two parts. The first part describes what are primarily mechanical features of construction and configuration; the second part describes primarily electrical features such as the contact arrangements and their adaptation to both the decimal and binary or other non-decimal numerical systems. Such adaptation is accomplished by the proper arrangement of the switching contacts, both fixed and movable.

Appellant argues in his brief that the two inventions disclosed and claimed are "The 'Wall Structure' Invention" and "The 'Switching' Invention," contending that the former is claimed in the patent and the latter in the claims on appeal. In brief, patent claims 1–6 are said to relate to the geometry of the front of the switch casing whereby, as may be seen in Fig. 6, "the extent to which the switching wheel may be rotated during any given operation is governed by the physical relationship which exists between the several finger lugs 35 and adjacent portions of the switch casing 10." This includes the diverging surfaces 15a and the curvature of the notches 34. Patent claims 7–11 are said to be directed to the interlocking relationship and features of the individual units 10. On the other hand, says appellant, the application claims on appeal are directed to the "electrical aspects of applicant's invention." He appears to rely heavily on claim recitations of "correlation" of information signals derived from the switch contacts with the "indicia on the switching wheel," which he says is nowhere mentioned in the patent claims.

We fail to see the clear line of distinction between the patent and application claims which appellant's brief asserts. We also fail to find the claiming of identical inventions as asserted by the examiner and the board. We do find significant differences in the substance of the claimed subject matter.

The examiner's rejection as recapitulated in his Answer was as follows: Claims 1–3 are rejected on patent claim 7 for double patenting, the same invention being claimed as the differnces are "in scope only." Claims 4–6 and 8 are rejected on patent claim 1 for double patenting, though they "differ from the patent claim in that the window is broadly claimed." Nevertheless, the examin-

er's position was that there is "only one invention set forth in claim 1 [of the patent] and claims 4–6 and 8." Claim 7 was rejected for double patenting on patent claim 4, the examiner's position being "that this claim [7] defines an invention like that of claim 4 of the patent."

In affirming, the board adopted the examiner's Answer as a portion of its opinion and expressed its own view that "the claimed subject matter is identical in each instance and the difference in the claims is one of changed verbiage or of the breadth of definition of corresponding elements." While the board appears to have found differences in the *claims* it said it was "not apparent" that there was any difference in "the *claimed subjects matter*."

Because it found the claimed subject matter of the patent and the appealed claims *identical*, the board thereby distinguished the cases relied on by appellant, *In re Robeson* and *In re Kaye*, supra, and refused to give any effect to the terminal disclaimer.

■ It is necessary to consider each of the examiner's rejections separately, having in mind the law which applies to the obviating of "double patenting" by the timely filing of a terminal disclaimer as set forth in the following recent cases decided by this court: *In re Robeson* and *In re Kaye*, In re Bowers, 359 F.2d 886, 53 CCPA 1590, the two *In re Braithwaite* cases, 379 F.2d 594 and 606, 54 CCPA 1589 and 1604 (1967) and In re Jentoft, Cust. & Pat.App., 492 F.2d 633 (April 18, 1968). In short, if the patent and application claims differ in substance as to the subject matter claimed, the terminal disclaimer obviates the rejection.

*Rejection of Claims 1–3
on Patent Claim 7*

Appealed claim 1 and patent claim 7 are both combination claims including a number of coacting elements; both are directed to a composite switch consisting of an assembly of several switching units, details of the units being specified. In his Answer, the examiner refers to specific elements present in patent claim 7 which are not in appealed claim 1, namely, the "means extending through said units binding them together" (the through-bolt 44), the lip 26 at the front of each unit casing which overlies and locks with the next adjacent unit, and the overhanging flanges 27 which define the window through which the indicia are seen. These were differences relied on by the applicant. Additionally, the examiner pointed to a further limitation in patent claim 7, that the circuit board forming the side of each unit underlies the lip 26 of the adjacent unit. The examiner also showed, by an analysis made in his final rejection, before the filing of the disclaimer, that application claim 1 contains a limitation to means for mounting the switch in a panel not present in patent claims 7–11, a difference he then characterized as not amounting to *patentable* novelty, and a further limitation to the movement of each switch wheel between a number of discrete positions corresponding to information signals to be generated, also not present in said patent claims.

■■ In such a situation, where the combination claims being compared clearly do not contain the same elements, they cannot be said to be directed to the same invention. In re Baird, 348 F.2d 974, 52 CCPA 1747; In re Borah, 354 F.2d 1009, 53 CCPA 800. Before the terminal disclaimer was filed, the examiner appears to have been properly concerned with the *obviousness* of the differences between the subject matter claimed but with the filing and acceptance of the disclaimer that becomes unimportant. The disclaimer obviates the double patenting rejection of claim 1.

Claim 2 is dependent on claim 1 and merely adds the limitation that the switch wheel is rotatable in either direction. Its rejection falls for the same reason as that of claim 1.

Claim 3 is another independent claim similar to claim 1, differently organized, and with some further limitations to details not recited in claim 1. How it

differs from claim 1 is unimportant, the significant fact being that it differs from patent claim 7 in the same respects as claim 1. Its rejection is therefore obviated by the terminal disclaimer for the same reasons.

### Rejection of Claims 4–6 and 8 on Patent Claim 1

Beside patent claim 7, patent claim 1 is the only other independent claim, patent claim 4, also relied on in the rejection of claim 7, discussed later, being dependent on it. Claim 1 is, in accord with appellant's contentions, truly directed to "wall structure" aspects of the switch and contains many limitations to the related configurations of the switch housing and wheel, illustrated at the left of Fig. 6, above, adjacent the finger of the operator. Many, if not most, of these limitations we find lacking in appealed claims 4 and 5, which, on the other hand, contain limitations with respect to the electrical contacts and their relationship to the indicia on the wheel which are not to be found in patent claim 1. While, of course, all these claims read on the identical switch and housing structure described in both the patent and the application and necessarily *relate* thereto, we do not find what is *defined* in claims 4 and 5 to be at all the same as what is defined in patent claim 1. It must be concluded, therefore, that these claims do not define identical inventions. Since they do not, the terminal disclaimer, obviating any possible timewise extension of patent protection, obviates the double patenting rejection.

Claims 6 and 8 are dependent on claim 5. Claim 8 depends indirectly from claim 5 by being dependent on claim 7 which depends from claim 5. Claim 6 merely recites that the "digital system" of claim 5 is a decimal system and that the switch wheel moves to 10 positions spaced 36° apart, approximately. (Dividing a circle into ten equal parts necessarily results in 36° segments.) Claims 7 and 8, in conjunction, add limitations to claim 5 reciting the two kinds of switch contacts carried by the wheel for

generating signals corresponding to the indicia appearing in the window, the digital system being a binary system and the signals produced being in accordance therewith. None of these added limitations are to be found in patent claim 1 and, of course, these dependent claims enjoy all the differences from claim 1 to be found in parent claim 5. They are, therefore, not to the same invention as claim 1. The disclaimer obviates their double patenting rejection.

### Rejection of Claim 7 on Patent Claim 4

As just noted, appealed claim 7 depends from claim 5. Patent claim 4 depends from patent claim 1. Claim 1 describes the switching means broadly while claim 4 specifies that it includes a printed circuit and a wiper engaging it, the two being relatively movable to effect switching upon rotation of the rotor (wheel). Claim 7 of the application likewise deals with electrical contacts but neither it nor claim 5 refers to a printed circuit. Claim 7 recites two separate contacts on the wheel, one in the nature of a slip ring, called the "brush contact," which remains connected to a common terminal, the other being called a "switch arm means" which connects with the fixed terminals in the different positions of the wheel. The examiner said, "This claim contains the limitation to a brush contact which * * is found in patent claim 4 which is dependent from claim 1. Thus, it is the Examiner's position that this claim defines an invention like that of claim 4 of the patent."

We believe the examiner misreads the claims as we find no element in claim 4 of the patent corresponding to the "brush contact" of claim 7; rather the "wiper means" of claim 4 corresponds to the switch arm of claim 7. Furthermore, and more importantly, comparing appealed claim 7 and its parent claim 5 with patent claim 4 and its parent claim 1, as we must, we do not find them to be directed to the same subject matter for the reasons stated in comparing patent claim 1 and appealed claim 5. When

the limitations of the dependent claims are considered, we find still further differences. The rejection of claim 7 is obviated by the terminal disclaimer.

### Conclusion

The decision of the board affirming the several rejections of the examiner on the ground of double patenting is reversed.

Reversed.

SMITH, Judge (concurring).

The dissenting opinion herein prompts me to add a few additional observations which support the conclusion reached by the majority.

The issue here arises in a "same invention" type of "double patenting" situation. In In re Robeson, 331 F.2d 610, 51 CCPA 1271 (1964), we observed that the bar to a *second* patent on the *same* invention arises from 35 U.S.C. § 101. There, the court stated:

Where the claims of a second application are substantially the same as those of the first patent, they are barred under 35 U.S.C. 101. In re Ockert, 245 F.2d 467, 44 CCPA 1024. Miller v. Eagle Mfg. Co., 151 U.S. 186, 14 S.Ct. 310, 38 L.Ed. 121 (1894).

Thus, the analysis required was whether "one invention" had been twice claimed. That required a factual inquiry into whether the claims of the application were "substantially the same" as the claims of the patent.

Later decisions of this court have refined the "same invention" analysis so that now the legal issue which we face when a terminal disclaimer is filed is whether the appellant claims the *same subject matter*, i. e., *the same invention*, that he previously claimed in his earlier-issued patent. In re Walles, 366 F.2d 786, 54 CCPA 710 (1966). See In re Faust, 378 F.2d 966, 54 CCPA 1459 (1967). Thus, before appellant's application may be said to claim the "same invention" as his patent, the claims must *in fact* claim again the *same subject matter*. *In re Walles*, supra. As noted in *Walles*, this inquiry is a *factual* inquiry and requires that *all* of the subject matter defined by the entire claim must be considered. 366 F.2d at 790, 54 CCPA at ——.

Here, it seems to me, the majority opinion has carefully developed the factual analysis necessary to support its conclusion that the "same invention" has *not* been twice claimed. I do not find any *comparable factual analysis* in the dissenting opinion. I am, therefore, not persuaded by the dissent that the majority is in error. I cannot agree, in the absence of a convincing factual analysis to the contrary, that the same combination of elements has been claimed in both the application and the patent. I think it improper on the present record to attempt a value judgment as the dissent does as to what the claims "in essential part" are directed; that those differences between the claims are "minor changes in scope and verbiage," that they contain a "minor mechanical feature," that there are other "minor differences in the claim scope and verbiage," or that certain limitations are "de minimis." Thus, it seems to me the dissent is bottomed on an intuitive or subjective rationale which has no factual support in the present record to which we are limited under 35 U.S.C. 144. Thus, I believe that this case should be decided solely on the only basis which the record supports, i. e., the factual comparisons as fully set forth in the majority opinion.

I note that in In re Eckel, 393 F.2d 848 55 CCPA —— (1968), the court fully and carefully developed a strong factual basis for that decision. It seems to me that this decision should rest on a comparable basis. When the *Eckel* type analysis is applied here, it requries the conclusion stated in the majority opinion.

Furthermore, in *Eckel*, the majority of this court carefully analyzed the line of reasoning that suggested "four categories" of "invention" into which "double patenting situations" may fall. It noted that "mere colorable variation" was not intended in *Robeson* to create a fourth

category of invention for double patenting purposes. "The keystone of the colorable variation concept," the court said, "was that *the same invention* was being claimed although not in precisely the same language." It stated that an "analysis couched in terms of a 'colorable variation' is unnecessary and undesirable."

As previously pointed out, the board here, as did the board in *Eckel* called the differences in the inventions "colorable variations." Thus, to affirm the board here as the dissent would do, seems to undo the constructive step taken in *Eckel* as well as to erode the rationale of *Robeson*. This is necessarily the case as the dissent here seems to require an initial value judgment, for which there is no record support, to determine whether the differences between the claims are, in fact, more than a "minor" change "in scope and verbiage." Such a test seems fraught with the same difficulties as was the "mere colorable variation" test and adds a further uncertainty arising from its substitution of a subjective evaluation for factual analysis.

Courts have previously noted that each claim of a patent is in theory a separate patent. See in re Cole, 326 F.2d 769, 775, 51 CCPA 919, 926 (1964); Kemart Corp. v. Printing Arts Research Laboratories, 201 F.2d 624, 633 (9th Cir. 1953). In *Cole*, we referred to "elementary principles of claim interpretation" stated in In re Handel, 312 F.2d 943, 948, 50 CCPA 918, 924 (1963), arising in the context of the reissue statutes that:

> * * * whenever an element or other limitation is added to or taken from a claim it becomes a claim to a different invention. Yet the whole purpose of the statute, so far as claims are concerned, is to permit limitations to be added to claims that are too broad or to be taken from claims that are too narrow. That is what the statute means in referring to "claiming

more or less than he had a right to claim."

The fact that the respective disclosures are identical does not require the conclusion that the same invention is necessarily claimed in both the application and the patent. There is no reason why an applicant's remedy by way of terminal disclaimer is or should be proscribed by the reissue provisions of the statute. The statutory provision involving terminal disclaimers, 35 U.S.C. § 253, and the statutory provisions involving reissues, 35 U.S.C. §§ 251, 252, are remedial in nature. See In re Braithwaite, 379 F.2d 594, 601, 54 CCPA 1589, 1599 (concurring opinion); In re Wesseler, 367 F.2d 838, 54 CCPA 735 (1966).[1]

On what authority, then, should we here decide which of these two remedial tools an applicant should use? However, as between the remedy provided by a reissued patent and that provided by a terminal disclaimer, it seems to me the public interest is better served by the terminal disclaimer provisions since the disclosure of the first patent can be made public at an earlier instance than if prosecution is protracted to permit prosecution of all the claims to which an applicant may be entitled. It is generally conceded that early publication of patents is in the public interest, hence any procedure which facilitates this end should be encouraged.

Under 35 U.S.C. § 251, a reissue patent may be granted enlarging the scope of the claims if applied for within *two years* from the grant of the original patent. Reissue patents narrowing the scope of the claims may be granted anytime during the life of the patent. In the first of these instances, a time lapse occurs before the breadth of the claims of a patent may be determined with finality; in the latter, one never knows how narrow a patent claim may be. So if the anticipated evil is receiving a claim en-

1. In *Wesseler*, this court referred to 35 U.S.C. § 251 as a "remedial provision designed to advance both the rights of the public and the inventor" and spoke in favor of a liberal construction of these provisions "in order to secure to inventors protection for what they have actually invented." 367 F.2d at 849, 54 CCPA at ——.

larged in scope, it seems to me to be far better from a policy standpoint to have the Patent Office machinery set in motion at the earliest moment, i. e., during the pendency of the first application. I find this objective most nearly achieved by the liberalized use of terminal. disclaimers.

Should the remedial practice here approved by the majority be subjected to abuses in derogation of the public interest, the jurisdiction of the courts is adequate to protect this interest. Historically, it will be recalled that the equitable doctrine of intervening rights developed to prevent abuse of the remedial provisions permitting the reissue of patents.[2]

Finally, I agree with the statement in a current review [3] of developments in the law of double patenting that:

> * * * the present case-by-case determination as to whether or not particular inventions are "colorable variations" or are "separate and distinct" does not seem to be a desirable long-term procedure * * *.

The dissent herein, it seems to me, confuses these issues still further by its substitution of factually unsupported value judgments as to whether the claims relate to "minor" improvements for the more certain standards used in *Eckel* and in *Robeson*.

I therefore concur with the reasoning and conclusion of the majority.

ALMOND, Judge (dissenting, with whom WORLEY, C. J., joins).

I disagree with the majority opinion. It seems clear to me that the claims of the application are directed to the identical invention claimed in appellant's patent.

Claims 1–3 of the application are drawn to a plural switch assembly, as are claims 7–11 of the patent. In essential part, all of these claims are directed to an assembly of individual switch units each comprising a rotary switch member having symbols thereon, a stationary contract structure and a window for viewing the symbols which additionally serves as an opening through which finger engaging lugs on the wheel extend.

Claims 4–8 of the application are drawn to an individual switch unit having the essential elements noted above. Patent claims 1–6 are likewise directed to the individual switch unit.

The differences which exist between the application claims and the patent claims are no more than minor changes in scope and verbiage, with the application claims generally having broader recitations than the patent claims. For example, a recitation in the patent for "means extending through said units and binding them together" finds broader expression in the application as "means for mounting said unit as a common compact rigid assembly." Both of these recitations refer to bolt 44 in the drawings. Similarly, the patent claims recite lip 26, which aids in the interlocking function. I do not find this minor mechanical feature mentioned specifically in the appealed claims, but it is certainly within the recitation "means for mounting said units as a common compact rigid assembly."

There are other minor differences in the claim scope and verbiage as well. A "casing having an outer face wall * * * with a view opening" in the patent claim corresponds to "a switch panel having an open window" in the application. Similarly, the outline of the window opening and the relationship of the lugs on the rotary member relative to the opening in the window are defined more narrowly in the patent claims than

---

2. For review of the historical development of patent reissues and the current statutes, with emphasis on the respect to be given to intervening rights, see Federico, Intervening Rights in Patent Reissues, 30 Geo.Wash.L.Rev. 603 (1962).

3. Bones, The Terminal Disclaimer and Double Patenting, 49 JPOS 864, 876 (Dec. 1967).

in those of the application. Other *de minimis* limitations which appear in one set of claims or the other recite "means for mounting said composite stationary switch unit" (a hole for insertion of a bolt?), that the switch wheels may turn in both directions, that the positions of the switch are spaced at regular intervals, that the "digital" system is decimal or binary, and that the indicia on the wheel correspond to the signals generated by the switch contact position.

In my opinion, the majority has erred in this case by failing to distinguish between differences in the *claims* and differences in the *claimed subject matter*. It is only necessary to read the claims to find differences in the *claims*, but it is necessary to read the claims *in the light of the specification* to determine differences in the *claimed subject matter* (i. e. the invention). In re Chilowsky, 306 F.2d 908, 50 CCPA 806; In re Sarett, 327 F.2d 1005, 51 CCPA 1180; In re Honn, 364 F.2d 454, 53 CCPA 1469; In re Walles, 366 F.2d 786, 54 CCPA 710.

It bears repeating that the disclosure of the patent and that of the application are *identical*. The claims of each are drawn to the same combination of essential elements, differing only in the addition, deletion, or recitation in different terms of elements of minor importance. In holding that such changes cause the claims to be directed to different inventions, the majority seems to overlook our previous holdings in In re Knohl, 386 F.2d 476, 55 CCPA ——; In re Faust, 378 F.2d 966, 54 CCPA 1459; In re Griswold, 365 F.2d 834, 53 CCPA 1565; In re Bridgeford, 357 F.2d 679, 53 CCPA 1182; and In re Siu, 222 F.2d 267, 42 CCPA 864.

There does not appear to be any valid attempt here to claim a different invention from that previously claimed. On the contrary, the attempt is to secure more claims to the *same* invention which was previously claimed. If there is a genuine need for such claims by appellant, his proper remedy resides in the reissue provisions of 35 U.S.C. § 251. I do not believe that the intent of Congress in providing for terminal disclaimers in 35 U.S.C. § 253 was to allow an applicant to obtain all the benefits of a broadened reissue patent without meeting the requirements and being subjected to the public protections of 35 U.S.C. §§ 251 and 252. I would affirm.