55 CCPA

**Application of Charles J. PLANK and Edward J. Rosinski.**

**Patent Appeal No. 7974.**

United States Court of Customs and Patent Appeals.

July 3, 1968.

Raymond W. Barclay, New York City, Richard K. Stevens, John F. Witherspoon, Stevens, Davis, Miller & Mosher, Washington, D. C., for appellants.

Joseph Schimmel, Washington, D. C. (Raymond E. Martin, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and Judges RICH, SMITH, ALMOND, and KIRKPATRICK.*

RICH, Judge.

This appeal is from a decision of the Patent Office Board of Appeals[1] affirming the examiner's rejection of claims 1–24 and 40 of appellants' application serial No. 195,430, filed May 17, 1962, entitled "Catalyst and Conversion of Organic Compounds in the Presence Thereof." No claim has been allowed.

The invention is a catalyst composition and its method of preparation. Claims 1 and 18 are illustrative:

1. A catalytic composition comprising a finely divided crystalline aluminosilicate having a silica to alumina mole ratio in excess of 3 distributed throughout and held suspended in a matrix therefor, wherein the negative electrovalence of the silica and alumina of said aluminosilicate is balanced by ions of at least one member selected from the group consisting of metals below sodium in the electromotive series, calcium, ammonium, hydrogen and combinations of such ions with one another.

18. A method for preparing a catalytic composition which comprises intimately admixing an alkali metal aluminosilicate having a silica to alumina mole ratio in excess of 3 in finely divided form with a binder therefor and base exchanging the resulting composite with a solution containing ions of at least one member selected from the group consisting of metals below sodium in the electromotive series, calcium, ammonium, hydrogen and combinations of such ions with one another to replace at least about 70 per cent of the original alkali metal ion content of said aluminosilicate and to reduce the exchangeable alkali metal content of the resulting base exchanged composite to less than 3 per cent by weight.

The references relied on are:

Plank et al. 3,140,249 July 7, 1964
Rabo et al. 3,130,006 Apr. 21, 1964

Plank et al., a patent issued to appellants[2] about two years after the filing date of the application at bar, also claims a catalyst composition and a process of preparing and using it. Its claims are used as the basis for a double patenting rejection. It is not a prior art reference. While many claims are relied on, claims 16 and 17 are of chief interest:

16. A catalytic composition comprising an inorganic oxide matrix having distributed therein a finely divided

---

* Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

1. Consisting of Lidoff, Behrens and Mangan, Examiners-in-Chief, opinion by Lidoff.

2. Assignee, Socony Mobile Oil Company, Inc., which is also assignee of the instant application.

crystalline aluminosilicate, which aluminosilicate is obtained by: (1) crystallization from a reaction mixture whose composition expressed in terms of oxide mole ratios falls within the following ranges:

$SiO_2/Al_2O_3$ .....From 3 to 5
$Na_2O/SiO_2$ ........From 1.2 to 1.5
$H_2O/Na_2O$ ........From 35 to 60

and (2) subsequent base exchange of the resulting crystallized product substantially free of sodium ions, said composition having an overall sodium content of less than about 1 weight percent.

17. The process which comprises preparing a reaction mixture whose composition expressed in terms of oxide mole ratios falls within the following ranges:

$SiO_2/Al_2O_3$ .....From 3 to 5
$Na_2O/SiO_2$ ........From 1.2 to 1.5
$H_2O/Na_2O$ ........From 35 to 60

base exchanging the product which crystallizes from said mixture until said product is substantially free of sodium ions, combining the base-exchanged material, in finely divided form, with a porous inorganic oxide, the latter serving as a matrix for the former and the resultant composite having an overall sodium content less than about 1 weight percent and utilizing the composition so obtained as a catalyst in the conversion of hydrocarbons.

Rabo et al.,[3] cited to show prior art, discloses an aluminosilicate compound prepared "by ion-exchanging a substantial portion of the metal cations of a crystalline zeolitic metal aluminosilicate having a $SiO_2/Al_2O_3$ ratio of greater than about 3.0, with protons or more preferably with ammonium cations, followed by thermal treatment at temperatures of between 350°C. and 600°C., and

preferably at temperatures of between 475°C. and 600°C." The process is further described:

The process by which the novel materials of this invention are produced may be called "decationization." The decationized molecular sieve aluminosilicates produced thereby, having at least some of their aluminum atoms unbalanced by cationic substituents and yet having unimpaired crystalline configuration have, in addition to the absorbent properties of all molecular sieves, further use as hydrocarbon conversion catalysts. Among the hydrocarbon converting processes which may be catalyzed by the novel compositions of this invention are cracking or hydrocracking processes.

The examiner rejected all of appellants' claims on the claims in the Plank et al. patent in view of Rabo et al. He explained:

The Plank et al. patent claims a similar catalyst composition * * * together with a diluent; the crystalline zeolite may contain metals from the group IIA IIIB and IVA of the Periodic Table. While the said claims do not specify that the crystalline zeolite is of the Y type, having a ratio of silica to alumina greater than 3, such insertion in the patent claims does not entitle the applicants to an additional patent, since the art knew at the time this application was filed that the use of the Y type of crystalline zeolite in that composition of the patent claims produces a catalyst composite having improved properties, such as being more steam resistant, greater resistance to abrasion has greater absorption and better catalyst properties as taught by Rabo et al. * * *.

In other words, he felt that the limitation of the claims in the application to crystalline zeolite with a silica-to-alumina ratio "in excess of 3" (Y–type) created no more than "a colorable distinction" from the claims in the patent.

3. Assignee, Union Carbide Corporation.

Appellants' assignee filed a terminal disclaimer.[4] The examiner, however, was of the opinion that the double patenting rejection could not thus be obviated. He said:

> The Examiner in reply wishes to state that in spite of the filing of a disclaimer limiting the period of the patent term to that of the Plank et al. patent, to merely specify in the patent claims that the crystalline zeolite is of the Y type with its known advantages as shown in the Rabo et al. patent is merely a colorable difference from the patent claims, and does not entitle appellants to another patent for the *same invention*.[5]

The board agreed with the examiner's rejection:

> * * * in view of the advantageous properties taught by Rabo et al. * * it would be obvious to one skilled in this art to select as the aluminosilicate component of the catalytic composition of the Plank et al. patent the so-called "Y" type with the expectation of obtaining the advantageous results urged by appellants to support a separate patent.

The board also thought the disclaimer ineffective to obviate the rejection. It was unmoved by appellants' citation of In re Robeson, 331 F.2d 610, 51 CCPA

1271 (1964) and In re Kaye, 332 F.2d 816, 51 CCPA 1465 (1964):

> * * * the factual situation herein is entirely different from that presented in the cited decisions in that the claims herein differ in scope only from those of the patent. The relationship is genus-to-species rather than the species-to-species relation presented in the cited decisions.

Since the board wrote its opinion herein, we have decided that the terminal disclaimer *is* efficacious to obviate double patenting rejections in the genus-species situations. In re Jentoft, 392 F.2d 633, 55 CCPA —— (1968); In re Braithwaite, 379 F.2d 594, 54 CCPA 1589 (1967); In re Braithwaite, 379 F.2d 606, 54 CCPA 1604 (1967). The present effect of the disclaimer is to limit the inquiry to whether the same invention is twice claimed. In re Boylan, 392 F.2d 1017, 55 CCPA —— (1968); In re Eckel, 393 F.2d 848, 55 CCPA —— (1968). We look only to see whether the differences between the patented claims and those applied for are sham or real, semantic or actual. In re Eckel, supra; In re Wright, 393 F.2d 1001, 55 CCPA —— (1968). The board's opinion undertook no such analysis and therefore cannot stand on its own rationale.

The solicitor, however, presented an alternative rationale[6] at oral argument.

---

4. The disclaimer, pursuant to 35 U.S.C. § 253, 2nd para., disclaimed that part of the term of any patent maturing from the application on appeal after July 7, 1981, which is the expiration date of Plank et al. patent No. 3,140,249, commonly owned.

5. The examiner's use of the terms "colorable distinction" and "colorable difference" shows how unsatisfactory the word "colorable" is as a means of communicating a clear idea of the ground of rejection. The examiner says the "same invention" is being claimed as is claimed in the patent. What then does he intend by the term "colorable"? Does he mean there is *no* difference or distinction or does he mean that the difference—the use of Y-type zeolite—is *obvious?* If he does not intend the latter meaning, then

why does he rely on Rabo et al.? It does not take a reference to show that there is no difference. It may take one to show that where there is a difference, the difference is not such as to render the claimed invention as a whole unobvious. See In re Eckel, 393 F.2d 848, 55 CCPA ——, for further observations on "colorable." This field of law will progress toward clarity with greater alacrity if the use of the word is abandoned and rejections are stated in less ambiguous terms.

6. Arguably "inherent" in one of the board's comments. The solicitor's brief supported the board. However, by oral argument, he thought it better, in view of our recent cases, not to pursue the "issues" briefed.

He stipulated, in effect, that claims 16 and 17 of the patent cover aluminosilicates in which the silica to alumina ratio is 3 or less.[7] The application claims, he argues, cover aluminosilicates with ratios above about 3. He urges that the patent and application therefore claim the "same invention," i. e., aluminosilicates with a silica to alumina ratio of about 3.

 This is no more than the "overlap" argument we repudiated in the *Braithwaite* cases. The mere fact that claims in part delimit a common area will not prevent efficacious use of a terminal disclaimer to obviate a double-patenting rejection.

The decision of the board is reversed.

Reversed.

WORLEY, C. J., concurs in the result.

---

7. Claims 16 and 17 of the patent define the catalyst in terms of *starting materials*. The silica to alumina ratio of the *product*, according to the solicitor's argument, is 2.5 ± 0.5.

